UNIÓN DE TRABAJADORES DE LA INDUSTRIA ELÉCTRICA Y RIEGO DE PUERTO RICO, recurrente, *v.* JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, recurrida; AUTORIDAD DE LAS FUENTES FLUVIALES DE PUERTO RICO, recurrente, *v.* JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, recurrida.

*Números:* O-69-208, O-69-197        *Resuelto:* 27 de septiembre de 1971

*José Vilá Ruiz, Luis F. Candal, Luis M. Rivera Pérez, Marcelino Delgado Medina* y *Rafael Buscaglia Guillermety,* abogados de la Autoridad de las Fuentes Fluviales de Puerto Rico; *Vicente Ortiz Colón,* abogado de la U.T.I.E.R.; *Gilberto Gierbolini Ortiz, Procurador General, Celia Canales de González, José E. Rodríguez Rosaly* y *Miguel A. Rivera Arroyo,* abogados de la recurrida.

PER CURIAM: Con motivo de cargos presentados por el señor Nemesio Poventud, la Junta de Relaciones del Trabajo de Puerto Rico expidió sendas querellas contra la Autoridad de Fuentes Fluviales de Puerto Rico y la Unión de Trabajadores de la Industria Eléctrica y Riego de Puerto Rico (UTIER). A la Autoridad de las Fuentes Fluviales se le imputó haber violado el convenio colectivo negociado con la (UTIER) en su Art. VII, Sec. 9, al no extender nombramiento al señor Nemesio Poventud, luego de haberlo seleccionado, para ocupar la plaza en ascenso de Operador de Relevo II en la Central Carite de Guayama, Puerto Rico y además haber violado el mismo convenio en su Art. VIII, Sec. 11 al extender nombramiento al señor Santos Molina sin que el Comité de Adjudicación de Plazas tomara jurisdicción sobre el nombramiento a la plaza de Operador de Relevo II

luego que los representantes de la unión y el patrono no se pusieron de acuerdo sobre el nombramiento en exceso del término que establece el convenio para que dicho Comité intervenga.

A la UTIER se le imputó en la querella expedida por la Junta que habiendo la Autoridad de las Fuentes Fluviales de Puerto Rico seleccionado al señor Nemesio Poventud para la plaza vacante de Operador de Relevo de Central Hidroeléctrica II y no habiendo estado de acuerdo la querellada con dicha selección éste se negó a someter el asunto al Comité de Ajuste dispuesto en el convenio y gestionó y logró el nombramiento por la Autoridad del señor Santos Molina para ocupar la referida plaza. Por tal razón, se alega en la querella que la indicada Unión querellada violó el Art. VII del convenio y no representó al señor Poventud justa e imparcialmente en el procedimiento relativo al nombramiento para la plaza de Operador de Relevo.

Luego de contestadas las querellas, el caso se sometió a un Oficial Examinador a base de la prueba documental que obraba en los autos. Dicho oficial rindió su Informe en el cual concluyó que las querelladas habían incurrido en prácticas ilícitas del trabajo dentro del significado de los incisos 8(1) (b) y 8(2) (a) de la Ley de Relaciones del Trabajo de Puerto Rico. [1]

Adoptando las conclusiones de hecho del Examinador aunque no así las de derecho, la Junta de Relaciones del Trabajo de Puerto Rico emitió su "Decisión y Orden" en 31 de julio de 1969. La orden dispone:

"ORDEN

Se ordena a la querellada, Autoridad de las Fuentes Fluviales de Puerto Rico a:

1) *Cesar y Desistir de:*

---

[1] Ambos incisos declaran práctica ilícita del trabajo la violación de los términos de un convenio colectivo tanto por parte de un patrono como por una organización obrera.

a) Violar los términos del convenio colectivo que tiene firmado con la Unión de Trabajadores de la Industria Eléctrica y Riego de Puerto Rico (UTIER).

2) *Tomar la siguiente acción afirmativa:*

a) Ofrecer al querellante Nemesio Poventud una plaza igual o similar a la adjudicada al señor Santos Molina.

b) *Compensar* al querellante Nemesio Poventud por los ingresos que dejó de percibir por razón de la práctica ilícita incurrida. Esta obligación es de carácter solidario con la que se impone en igual sentido a la Unión de Trabajadores de la Industria Eléctrica y Riego de Puerto Rico (UTIER).

c) Fijar en su oficina y en sitios conspicuos de su negocio y mantenerlos fijados por un período no menor de treinta (30) días copias del Aviso que se incluye como Apéndice A.

d) Notificar al Presidente de la Junta, dentro del término de diez (10) días, de las providencias tomadas para cumplir con las disposiciones afirmativas de la Orden.

Se ordena a la Unión de Trabajadores de la Industria Eléctrica y Riego de Puerto Rico (UTIER) a:

1) *Cesar y Desistir de:*

a) Violar los términos del convenio colectivo que tiene firmado con la Autoridad de las Fuentes Fluviales de Puerto Rico.

2) *Tomar la siguiente acción afirmativa:*

a) Obviar en este caso las disposiciones sobre publicación de plazas contenidas en el Artículo VII del convenio.

b) Compensar al señor Nemesio Poventud por los ingresos que dejó de percibir por razón de la práctica ilícita incurrida. Esta obligación es de carácter solidario con la que se impone en igual sentido a la Autoridad de las Fuentes Fluviales.

c) Fijar durante treinta (30) días en sitios visibles para los trabajadores copia del Aviso que se incluye como Apéndice A.

d) Notificar al Presidente de la Junta dentro de los próximos diez (10) días del recibo de este Informe las providencias tomadas para cumplir con lo ordenado." (Exhibit E, págs. 8 y 9.)

Ambas querelladas han solicitado que revoquemos la transcrita orden.

En su Decisión y Orden la Junta hace tanto una exposi-

ción de los hechos como del derecho a su juicio, aplicable. Veamos.

"RELACIÓN DE HECHOS

Los alegatos de las partes, así como sus alegaciones durante la vista oral celebrada en este caso el día 3 de julio de 1969, demuestran que los hechos no están controvertidos por ninguna de las partes, y que surgen, además, de los documentos sometidos conjuntamente en evidencia por las partes.

El 15 de diciembre de 1964, la Autoridad publicó los requisitos de la plaza de Operador de Relevos de Central Hidroeléctrica II que incluían:

a) Ser graduado de escuela superior, escuela técnica o una equivalencia.

b) tener conocimiento del funcionamiento y manejo de una central Hidroeléctrica.

c) tener de uno a tres años de experiencia previa relacionada.

d) aprobar exámenes de aptitud y examen médico.

El 17 de febrero de 1965, se celebró una reunión en la oficina de las Centrales Carite entre el Ingeniero Eduardo Tuya, Jr., Jefe Operador, y el Sr. Saúl A. Ferrer Vives, Presidente del Capítulo de Guayama de la UTIER, con el fin de seleccionar el candidato para ocupar la plaza requerida. Se consideraron los dos candidatos que solicitaron la plaza, los señores Santos Molina Rivera y Nemesio Poventud, el querellante. El Ingeniero Eduardo Tuya, Jr. seleccionó a Nemesio Poventud 'porque reúne *todos* los requisitos de la plaza y está cualificado para desempeñarla.' El candidato Santos Molina fue rechazado por la Autoridad debido a que no reunía el requisito de escolaridad aunque tenía más años de experiencia en la Autoridad. El Presidente del Capítulo de Guayama de la UTIER no estuvo de acuerdo con la selección hecha por la Autoridad (Exhibit 6). El acta de la reunión aparece firmada por ambos participantes.

El 4 de mayo de 1965, se reunieron los señores Tuya y Ferrer Vives con el Sr. Rafael Ledesma, Superintendente General de Operación y Administración de la División de Producción y Transmisión de la Autoridad, a considerar en apelación la selección del querellante para ocupar la plaza en cuestión. Se analizaron los argumentos de los representantes de la UTIER y de la Autoridad. El Sr. Ledesma, según su memorial

del 2 de junio de 1965, manifestó que en caso de no poder producirse la prueba [de] escolaridad requerida por la plaza y que el Sr. Santos Molina alegaba poseer, 'ya que el Sr. [Ferrer Vives] insistía en la antigüedad como única base para la selección, el caso debería ser sometido a la consideración del respectivo Comité de Adjudicación de Plazas, ya que a pesar de su antigüedad el candidato Molina no llena los requisitos de la plaza' (Exhibit 7). El señor Molina presentó únicamente prueba de haber obtenido un diploma de 'Junior High School', o noveno grado (Exhibit 12).

El 2 de junio de 1965, el Sr. Rafael Ledesma le escribió un memorando a la División de Personal sobre la selección del candidato para cubrir la plaza de Operador II de la Central Carite Núm. 1. En este memorial, el señor Ledesma señaló que la UTIER objetó la selección de la Autoridad a pesar de que el candidato Nemesio Poventud llenó todos los requisitos, basándose en que su candidato Santos Molina, aunque no tiene la escolaridad requerida, es el trabajador más antiguo de la Autoridad. Señaló el señor Ledesma que como el señor Molina no había presentado la evidencia sobre la escolaridad que alegaba tener, recomendaba que se procediese a nombrar el Sr. Nemesio Poventud, con carácter condicional, y que el caso fuese sometido a la consideración del Comité de Adjudicación de Plazas (Exhibit 8).

El 6 de julio de 1965, se reunió el Comité de Adjudicación de Plazas para discutir el caso de Nemesio Poventud y Santos Molina. Como la minuta donde se sometía el caso no estaba firmada por el Sr. Saúl A. Ferrer, el Comité decidió que se le preguntara a éste si estaba de acuerdo con que se discutiera el caso en este Comité. Si no estuviese de acuerdo, se devolvería el caso para que las partes siguieran discutiendo esta plaza (Exhibit 9). El Sr. Ferrer manifestó que el caso debía devolverse al Sr. Ledesma para continuar con la discusión de la plaza. El Comité decidió devolver el caso al señor Ledesma para que se continuara con la discusión en torno a la plaza.

El 9 de julio de 1965, el Comité de Adjudicación de Plazas le envió un memorial al Ingeniero Jorge Dávila, Ingeniero Administrativo de la División de Producción y Transmisión, en el cual se señalaba que en reunión del 8 de julio de 1965, se había acordado devolver el caso sometido el 2 de junio de 1965, sobre la plaza de Operador de Relevo de Central Hidroeléctrica II,

debido a que el Sr. Saúl A. Ferrer objetaba que este caso hubiese sido sometido al Comité ya que él entendía que el mismo estaba todavía abierto a discusión (Exhibit 10).

El 7 de septiembre de 1965, el señor Ledesma le refirió el asunto de la plaza al señor Tuya, Jefe Operador, pidiéndole que lo discutiese con el señor Ferrer, 'con miras a determinar que materia adicional tenemos para discusión, y ver de ponerle fin al mismo apelando al Comité si fuera necesario' (Exhibit 13).

El 19 de enero de 1966, se reunieron en las oficinas de las Centrales de Carite el Ingeniero Eduardo Tuya, Jr. y el Sr. Saúl A. Ferrer. En esta reunión consideraron los dos candidatos que originalmente solicitaron la plaza. En el acta de la reunión se señaló que el querellante reunía todos los requisitos de la plaza, pero tenía menos antigüedad que el señor Molina. El señor Molina fue evaluado considerando los años de experiencia en sustitución de los requisitos de escolaridad.(*) Basándose en esa evaluación, aceptaron al señor Molina como candidato a ocupar la plaza bajo ciertas condiciones de adiestramiento.

"La UTIER objetó las condiciones impuestas en el nombramiento del señor Santos Molina y sometió al Comité de Ajuste el asunto para que éste resolviera si correspondía adjudicar la plaza en adiestramiento (Exhibit 20, pág. 8 Informe). El 13 de septiembre de 1967, el Comité emitió su decisión sosteniendo la corrección del nombramiento condicionado (Exhibit 25, pág. 9 Informe).

---

(*)"El Exhibit 4, sometido conjuntamente por las partes al Oficial Examinador, demuestra que para junio de 1962 la Unión y el Patrono se reunieron en la Junta Consultiva creada por el contrato e hicieron varias aclaraciones en la aplicación, interpretación y cumplimiento del convenio colectivo entre la Autoridad y la UTIER. Entre otras cosas, se acordó lo siguiente:

'E. A los fines de cubrir plazas publicadas, que tenga como requisito poseer diploma de cuarto año de escuela superior, podrán ser considerados para ocupar dichas plazas aquellos trabajadores regulares que durante un período *de no menos de tres años hayan desempeñado satisfactoriamente* plazas iguales *o análogas* aun cuando no posean dicho diploma, *a menos que la Autoridad* determine que por los conocimientos que requiere dicha plaza es necesario poseer el mismo. En todos los casos el trabajador deberá llenar los demás requisitos de la plaza, *poseer la preparación académica necesaria* y estar capacitado para desempeñar la misma.' (Subrayado nuestro.)" (Exhibit E, págs. 4 y 5.)

"El 1ro. de febrero de 1968, el Sr. Eduardo Tuya, Jr. le envió al Sr. Santos Molina una notificación de Acción de Personal donde le notificó su ascenso, en adiestramiento, a Operador de Relevo de Central Hidroeléctrica II. (Exhibit 28) La "Notificación de Acción de Personal" de la Autoridad fue formalizada en esa misma fecha (Exhibit 26).

*Las Prácticas Ilícitas:*

"A la luz de estos hechos, debemos resolver si la UTIER y el Patrono incurrieron en prácticas ilícitas de trabajo en el significado de las disposiciones sobre violación de contrato de la Ley de Relaciones del Trabajo de Puerto Rico.

Las disposiciones pertinentes del contrato leen como sigue:

'*Artículo VII*

Sección 1.—Cuando haya que cubrir plazas regulares vacantes o de nueva creación se dará preferencia, de acuerdo con el orden de prioridad y selección que se establece más adelante, a los trabajadores regulares con más tiempo de servicio en la Autoridad que estén capacitados para desempeñar tales plazas y que las soliciten.

Sección 2.—Con el fin de dar oportunidad a los trabajadores regulares a que soliciten las plazas vacantes o de nueva creación, éstas se publicarán especificando en idioma español los requisitos de las mismas, aplicándose el siguiente orden de prioridad. . . .

.   .   .   .   .   .   .   .   .

Sección 9.—Cuando haya que cubrir una plaza dentro de la unidad apropiada la Autoridad discutirá con la Unión compareciendo el representante de la Sección y/o el Presidente del Capítulo, sobre aquellos candidatos elegibles para ocupar la plaza en cuestión. La Autoridad notificará el nombramiento a la Unión dentro de un período de quince (15) días calendario a partir de la fecha de efectividad del mismo. De no estar conforme la Unión con el nombramiento o con la selección hecha por la Autoridad, la Unión podrá someter una querella directamente al Comité de Ajuste que se establece en este convenio dentro de un período de quince (15) días a partir de la fecha en que la Unión sea notificada por la Autoridad del nombramiento hecho por ésta.'

Si nos atuviéramos estrictamente a la letra de esta disposiciones a la luz del acuerdo de la Junta Consultiva (Exhibit 4), concluiríamos que las querelladas cumplieron con el convenio y con la Ley.

Nótese cómo desde la primera reunión, la celebrada el 17 de febrero de 1965, entre el Ingeniero Eduardo Tuya, Jr. y el Sr. Saúl A. Ferrer Vives, la UTIER cuestionó la selección hecha por la Autoridad (del señor Nemesio Poventud) sin tomar en consideración el elemento de antigüedad. Puede razonablemente concluirse que la UTIER se opuso a la selección del señor Nemesio Poventud amparándose en el acuerdo de la Junta Consultiva del año 1962, antes citado. No hay controversia sobre el hecho de que el señor Molina era el candidato más antiguo. Su única limitación consistía en no llenar el requisito de escolaridad. El acuerdo a que se ha hecho referencia tomado por la Junta Consultiva demuestra que las partes, la UTIER y la Autoridad, habían decidido sustituir el requisito de escolaridad en aquellos casos en que esto fuera posible.

Bajo los términos de este acuerdo válido de la Junta Consultiva, no es posible resolver que el señor Santos Molina fue indebidamente seleccionado por las partes, la UTIER y la Autoridad. Al sustituirse el requisito de diploma de cuarto año por la experiencia de tres años en una plaza análoga(*) quedaban ambos solicitantes en igualdad de condiciones. Bajo esta situación, entraba en juego el elemento de antigüedad, que el señor Santos Molina superaba por ser el empleado más antiguo.

La afirmación hecha por el Oficial Examinador a la página 10 de su Informe bajo el subtítulo El Derecho aplicado a los hechos, es errónea. Dice así el Oficial Examinador:

'Toda vez que el 17 de febrero de 1965, la Autoridad seleccionó al querellante para ocupar la referida plaza, con el desacuerdo de la UTIER, el Artículo VII (9) le imponía a la A.F.F. el deber de adjudicar la plaza al querellante.'

El Artículo VII (9) no obliga a la Autoridad a adjudicar la plaza al seleccionado. Por el contrario, dicho artículo prevee un proceso de discusión entre la UTIER y la Autoridad mediante el cual, en el toma y daca de la negociación colectiva, se llega a un acuerdo.

(*) "El señor Santos Molina desempeñaba la plaza de Auxiliar de Operador de Relevo de Central Hidroeléctrica, plaza análoga a la que estaba en controversia."

Sin embargo, es de rigor examinar dichas disposiciones con plena conciencia de los derechos que generan y de los efectos que conllevan para todas las personas afectadas.

Los convenios colectivos se firman para proteger a los empleados incluidos en la unidad apropiada. Una vez firmados, los convenios generan derechos para dichos empleados individuales.

Aunque la sección 9 del Artículo VII contempla un período de discusión(*) que culmina en la selección y nombramiento de alguno de los solicitantes, no podemos sancionar la extensión irrazonable de dicho período de discusión. Los hechos revelan que en el caso del señor Nemesio Poventud el período de discusión se prolongó por más de un año. (El 15 de diciembre de 1964 se publicó la plaza; el 19 de enero, ambas partes—unión y patrono—se pusieron de acuerdo en la selección del Sr. Santos Molina.

En este caso, la extensión irrazonable de ese período de discusión, tanto por parte de la UTIER como de la Autoridad, constituye una violación de las disposiciones del convenio, que perjudicó a un beneficiario de dicho convenio, el señor Nemesio Poventud. La Junta incumpliría su misión tutelar en la protección de los derechos de los trabajadores si en casos como el de autos no buscase un remedio justiciero, pues nuestra Ley reza como sigue . . . .

'El ejercicio de los derechos y el cumplimiento de las obligaciones de las partes en dichos convenios colectivos quedan, por tanto, sujetos a aquella razonable reglamentación que sea necesaria para lograr las normas públicas de esta Ley.' (Artículo I, Sección 5 de la Ley de Relaciones del Trabajo de Puerto Rico.)

En enero de 1966, la Autoridad y la UTIER lograron ponerse de acuerdo en que el nombramiento recayera sobre el señor Santos Molina, a quien la Autoridad se proponía extenderle un nombramiento condicional. En noviembre de ese mismo año,—sin que aún se hubiese formalizado el nombramiento— la UTIER recurrió ante el Comité de Ajuste a cuestionar la condicionalidad que la Autoridad se proponía imponer. Nos llama la atención que la UTIER recurriera al Comité de Ajuste en el

(*) "Cuando haya que cubrir una plaza dentro de la unidad apropiada la Autoridad *discutirá* con la Unión compareciendo el representante, etc. (Artículo VII, Sec. 9 del convenio colectivo.)"

caso de la selección del señor Santos Molina, sin que se hubiera hecho aún su nombramiento, cuando que en el caso del señor Poventud no hizo otro tanto.

Por todo lo cual, resolvemos que las querelladas violaron el convenio colectivo vigente al prolongar irrazonablemente el período de discusión provisto en la sección 9 del artículo VII. . . ." (Exhibit E, págs. 2 a 8.)

Surge meridianamente claro de la Decisión y Orden de la Junta que la violación del convenio colectivo imputada a los querellados consistió en haber prolongado irrazonablemente el período de discusión provisto en la Sec. 9 del Art. VII del Convenio Colectivo.[2] Sin embargo dicha Sec. 9, según lo reconoce la propia Junta "contempla un período de discusión que culmine en la selección y nombramiento de algunos de los solicitantes." Reconocemos que aunque el Convenio no establece un límite a este período, el mismo debe ser uno razonable. Dados los incidentes ocurridos en este caso en el proceso de selección y nombramiento no podemos concluir que las querelladas extendieran irrazonablemente dicho período de selección y nombramiento y que incurrieran, por tanto, en una práctica ilícita del trabajo.

Por otro lado, no entendemos como es que, aun en el supuesto de que el susodicho período se prolongara innecesaria e irrazonablemente, tal circunstancia obligue a las querelladas a (1) ofrecer al señor Nemesio Poventud una plaza igual o similar a la adjudicada al señor Santos Molina,

---

[2] La Sec. 9 del Art. VII del Convenio dispone:

"Sección 9.—Cuando haya que cubrir una plaza dentro de la unidad apropriada la Autoridad discutirá con la Unión compareciendo el representante de la Sección y/o el Presidente del Capítulo, sobre aquellos candidatos elegibles para ocupar la plaza en cuestión. La Autoridad notificará el nombramiento a la Unión dentro de un período de quince (15) días calendario a partir de la fecha de efectividad del mismo. De no estar conforme la Unión con el nombramiento o con la selección hecha por la Autoridad, la Unión podrá someter una querella directamente al Comité de Ajuste que se establece en este Convenio dentro de un período de quince (15) días a partir de la fecha en que la Unión sea notificada por la Autoridad del nombramiento hecho por ésta.".

y (2) compensar a dicho señor Poventud por supuestos ingresos que dejó de percibir, cuando la plaza en discusión fue adjudicada correctamente a otra persona a quien correspondía de acuerdo con los términos del Convenio Colectivo.

Es innecesario entrar en otras consideraciones ya que la orden de la Junta es claramente errónea y debe ser revocada.

*Se dictará sentencia revocando la Orden objeto de esta revisión.*

El Juez Presidente, Señor Negrón Fernández, no intervino.